IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**BARRY G. THOMPSON,**

**Plaintiff,**

v.                                                 **Civil Action No. 1:05cv42**
                                                                      **(Judge Keeley)**

**UNITED STATES DEPT. OF JUSTICE,
FEDERAL BUREAU OF PRISONS, HARLEY
LAPPIN, D. MCADAMS AND A. O'DELL,**

**Defendants.**

## OPINION/REPORT AND RECOMMENDATION

The *pro se* plaintiff initiated this civil rights action against the above-named defendants on March 11, 2005. In the complaint, the plaintiff asserts that his claims arise pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

On April 21, 2005, the plaintiff paid the entire filing fee. Then on May 10, 2005, the plaintiff filed proof of exhaustion. Accordingly, on June 15, 2005, the undersigned conducted a preliminary review of the file. Upon such review, the undersigned determined that all of the plaintiff's claims should be dismissed except for his claim of racial segregation against defendants McAdams and O'Dell. On September 7, 2006, the Report and Recommendation was adopted by the Honorable Irene M. Keeley, United States District Judge. Consequently, the Department of Justice, the Bureau of Prisons, and Harley Lappin were dismissed from this case, as were the plaintiff's claims related to retaliation, his presentence investigation report, and the denial of access to the courts. That same day, the Clerk issued summonses for defendants McAdams and O'Dell and the record reflects that

service was effected on those defendants on September 8, 2006.

After the granting of an extension of time, defendants McAdams and O'Dell filed a Motion for Summary Judgment on January 8, 2007. The Court issued a <u>Roseboro</u> Notice on January 11, 2007, in which the *pro se* plaintiff was advised of the proper way to respond to the defendants' dispositive motion and that the failure to so respond could result in an entry of judgment against him. Despite this notice, and adequate time to respond, the plaintiff has failed to file a response to the defendants' motion.

This case is before the undersigned for a report and recommendation on the defendants' Motion for Summary Judgment.

## I. The Pleadings

### A. The Complaint[1]

In the complaint, the plaintiff asserts that at all times relevant to the events described in the complaint, D. McAdams was the unit manager of cell block B-3 at the Gilmer Federal Correctional Facility ("FCI-Gilmer"). In addition, the plaintiff asserts that at all times relevant to the events described in the complaint, A. O'Dell was the case manager of cell block B-3 at FCI-Gilmer.

In support of his claim of racial segregation, the plaintiff asserts that on July 23, 2004, his cell mate, Santana, was ordered to move to another cell. The plaintiff was then given a new cell mate. The plaintiff's new cell mate immediately went to the cellblock officer and informed the officer that he and the plaintiff did not get along. When questioned by the cellblock officer, the plaintiff confirmed that he did not get along with his new cell mate. The plaintiff asserts that he was

---

[1] The Court will only discuss the complaint to the extent that it relates to the plaintiff's racial segregation claims against defendants McAdams and O'Dell.

2

then told by the cellblock officer that he would need to speak with defendant O'Dell because she had specifically ordered the cell change. The cellblock officer also allegedly told the plaintiff that the cell moves were made based on race, in that the plaintiff could only be celled with another white inmate.

The plaintiff asserts that he confronted defendant O'Dell concerning the racial segregation. The plaintiff asserts that defendant O'Dell became hostile and condescending. The plaintiff asserts that O'Dell told him he could not cell with Santana because Santana was Mexican. However, the plaintiff asserts that he and Santana had been cell mates for 13 months. When the plaintiff asked defendant O'Dell to place his new cell mate in another cell, she did not respond. Shortly thereafter, the plaintiff asserts that he was taken to the Special Housing Unit ("SHU").

As relief, the plaintiff seeks $150,000 in compensatory and punitive damages, as well as reasonable attorney's fees and costs, and any other relief the Court deems appropriate.

## B. The Defendants' Motion for Summary Judgment

In their motion for summary judgment, the defendants first assert that the plaintiff has failed to show that defendant McAdams was involved in the alleged racial segregation. In support of this claim, the defendants assert that in order to establish liability in a Bivens action, the plaintiff must show some sort of personal involvement on the part of each defendant. However, based on the facts stated in the complaint, the defendants assert that the plaintiff has failed to show how defendant McAdams was involved in the alleged racial segregation. In fact, the defendants assert that defendant McAdams was not even on duty that day. See Declaration of David McAdams. Thus, the defendants assert that defendant McAdams should be dismissed.

Second, the defendants assert that the plaintiff has failed to state any valid constitutional

claim. In support of this claim, the defendants provide their version of the events that led to the plaintiff being assigned a new cell mate on July 23, 2004.

In the late afternoon of Friday, July 23, 2004, an inmate approached Operations Lieutenant Richard McCollum about threats of a racial nature being made against him. See Declaration of Richard McCollum at 1. Specifically, this inmate asserted that African-American inmates in his unit had been threatening and harassing him. Id. The inmate also asserted that he was being pressured for sexual favors from a Hispanic inmate. Id. The inmate appeared fearful and agitated and stated that he was afraid for his safety and asked to be moved to another housing unit. Id.

In his declaration, Lt. McCollum asserts that he was familiar with this inmate from prior incidents and knew his medical history. Id. Based on his past experiences with the inmate, Lt. McCollum did not believe that the inmate could withstand the threats or intimidation from other inmates. Id. In light of this, and the approaching weekend, Lt. McCollum decided that in the interests of security, the inmate should temporarily be moved from housing unit B-4, to housing unit B-3.[2] Id. at 2. Lt. McCollum also determined that the inmate should be placed in a cell with another Caucasian inmate until his placement could be further evaluated on the following Monday. Id.

Lt. McCollum therefore contacted the case manager for the B-3 unit, April O'Dell. Id. Lt. McCollum informed defendant O'Dell that a B-4 inmate needed to be temporarily moved to her housing unit due to reported racial tensions and harassment. Id. Defendant O'Dell attempted to place the inmate in an empty cell or in a cell which housed only another Caucasian inmate. Declaration of April O'Dell at 2. However, defendant O'Dell could not find any such cells available.

---

[2] The defendants explain that FCI-Gilmer is a medium security prison which contains three separate housing buildings, designated, respectively, as A, B, and C. Memorandum (dckt 32-5) at 3. Each housing building contains four units. Id.

Id. Therefore, defendant O'Dell asked the unit officer to reassign some inmates in his unit so that the new inmate could be temporarily place in a cell with another Caucasian inmate. Id.

The unit manager moved the plaintiff's Hispanic cell mate to another cell to accommodate Lt. McCollum's request. Id. As the staff members were attempting to effect the change, defendant O'Dell was informed that the plaintiff was upset about the reassignment of his cell mate and that he was refusing to cell with the other Caucasian inmate. Id. Shortly thereafter, the plaintiff came to see defendant O'Dell to complain of the cell reassignment. Id. Defendant O'Dell asserts that the plaintiff alleged that she was retaliating against him for a previous infraction, but made no mention of racial segregation. Id. Defendant O'Dell asserts that she explained to the plaintiff that the reassignment was only temporary and that she would try to accommodate his request for a different cell mate after the weekend had passed. Id.

Defendant O'Dell called Lt. McCollum to inform him of the problems with the cell assignment. McCollum Declaration at 2. At the direction of Lt. McCollum, the plaintiff was removed from his cell and placed in disciplinary confinement, pending disciplinary action for refusing an order. Id. On the following Monday, it was discovered that the plaintiff had not actually refused an order, but that his new cell mate had merely said that the plaintiff would not allow him to move into the cell. Id. Thus, the plaintiff was not disciplined and he was released back to the general population on Tuesday, July 27, 2004. Id. When the plaintiff had returned to his cell, the other inmate had already been removed and the plaintiff's original cell mate had been returned. Id.

**II. Standard of Review**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. Rule 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

### III. Analysis

#### A. Defendant McAdams

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted). Thus,

in order to establish liability in a <u>Bivens</u> case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994); <u>Colburn v. Upper Darby Township</u>, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See <u>Zatler v. Wainwright</u>, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a <u>Bivens</u> case. <u>Rizzo v. Good</u>, 423 U.S. 362 (1976).

Here, as to the plaintiff's claims of racial segregation, the plaintiff does not allege any personal involvement on the part of defendant McAdams. In fact, defendant McAdams was not even on duty on the date of the cell reassignment. Thus, the plaintiff has failed to state a claim of racial segregation against defendant McAdams and that defendant should be dismissed.

## B. **Defendant O'Dell**

Racial segregation is subject to strict scrutiny. See <u>Johnson v. California</u>, 543 U.S. 499, 505 (2005). "Under strict scrutiny, the government has the burden of proving that racial classifications 'are narrowly tailored measures that further compelling governmental interests.'" <u>Id.</u> (quoting <u>Adarand Constructors, Inc. V. Pena</u>, 515 U.S. 200, 227 (1995)). However, "[a]lthough all governmental uses of race are subject to strict scrutiny, not all are necessarily invalidated by it." <u>Grutter v. Bollinger</u>, 539 U.S. 306, 326-327 (2003). In the prison context, "prison authorities have the right, acting in good faith and in particularized circumstances, to take into account racial tensions in maintaining security, discipline, and good order in prisons and jails." <u>Lee v. Washington</u>, 390 U.S. 333, 334 (1968). Therefore, racial classifications may be justified in a prison setting. <u>Johnson v. California</u>, 543 U.S. 515 ("Prisons are dangerous places, and the special circumstances they

present may justify racial classifications in some contexts.").

Here, the undisputed facts[3] show that the actions of prison officials in this case were taken because of safety concerns for an inmate other than the plaintiff. That inmate had expressed to staff a fear for his safety that staff determined was a legitimate threat to the health and safety of that inmate and the institution. Therefore, staff authorized a temporary housing reassignment for the inmate. Moreover, based on the racial nature of the threats made to the inmate, staff determined that the inmate should only be housed with another Caucasian inmate until further assessment of the danger could be evaluated. The determination to move the inmate to the plaintiff's cell was based on the circumstances and was done in consideration for the safety of the inmate and for the security of the institution. Once the inmate's claims had been more thoroughly evaluated, he was removed from the plaintiff's cell and the plaintiff's original cell mate was returned. The actions of the prison officials were clearly a matter of professional judgment and were "narrowly tailored" to further the compelling governmental interests of safety and security. Therefore, the plaintiff was not deprives of any constitutional right and he has failed to state a claim for which relief may be granted. Accordingly, the defendants are entitled to judgment as a matter of law.

## IV. Recommendation

For the reasons set forth in this Order, it is recommended that the Defendants' Motion for

---

[3] Rule 56 provides that when a motion for summary judgment is supported by affidavits and/or other documents, the party opposing the motion may not depend upon the mere allegations in his pleadings to counter it. Pursuant to Rule 56, the party opposing the motion must respond with counter sworn affidavits and/or documents to set forth specific facts showing that there is a genuine issue of material fact in dispute. If the opposing party fails to respond to the motion or responds, but the response does not comply with the requirements of Rule 56 as stated above, the Court may declare that the facts in the affidavits and/or documents supporting the motion are established as true and that there is no genuine issue of material fact in dispute. Here, the defendants have provided declarations and affidavits in support of their claims. Because the plaintiff has failed to file any counter-affidavits, there any no issues as to any material fact.

Summary Judgment (dckt. 32) be **GRANTED** and this case be **DISMISSED with prejudice**.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* plaintiff.

DATED: June _11_, 2007.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE